# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILIP PEREZ, )<br>)<br>Plaintiff/Counterdefendant, )<br>)<br>v. )<br>)<br>J.A.S. GRANITE & TILE, LLC, )<br>and GRAND STONE & TILE )<br>)<br>Defendants/Counterplaintiffs. ) | Case No. 10 C 4150<br><br>Magistrate Judge Daniel G. Martin |

## MEMORANDUM OPINION AND ORDER

Plaintiff Philip Perez has sued Defendants J.A.S. Granite & Tile, LLC ("J.A.S.") and Grand Stone & Tile ("GS&T") (collectively, "Counterplaintiffs") for declaratory judgment and the imposition of a constructive trust. Counterplaintiffs have filed counterclaims for replevin, conversion, and declaratory judgment. Currently before the Court is Counterplaintiffs' motion to modify an earlier order issued by Magistrate Judge Morton Denlow forbidding Counterplaintiffs from selling certain consigned materials held by Perez. Counterplaintiffs claim that their security interest in the consigned materials is superior to those of the consigning non-parties, Interiors of Stone Midwest, Inc. ("Interiors") and Granite and Marble Imports ("G&M"). Alternatively, Counterplaintiffs claim that Interiors and G&M should be joined to this action pursuant to Fed. R. Civ. P. 19. Also before the Court is Interiors' motion to intervene under Rule 24(a). For the reasons discussed below, Counterplaintiffs' motion [77] is granted in part, Interiors' motion [86] is denied, and this case is remanded to state court for all further proceedings.

## I. Background

In 2010, Perez was the successful bidder for a large inventory of stone and granite that was auctioned by court order. This included stone lots that were housed in a number of locations around the country, including Chicago. The winning bid was $3,470,000, plus a security deposit of $347,000. As part of a strategy to meet these payments, Perez assigned all of the inventory to J.A.S. through a chain of events that he later claimed amounted to economic duress. J.A.S. subsequently sought access to the Chicago inventory. Perez then brought this action in the Circuit Court of Cook County, Illinois to declare himself the owner of the inventory and to impose a constructive trust over it.

The Counterplaintiffs removed the case to this court on the grounds of diversity jurisdiction and the amount in controversy. *See* 28 U.S.C. §§ 1332 & 1441. Perez is an Illinois citizen; GS&T is a New Jersey corporation; and J.A.S. is a New Jersey limited liability company whose principals are New Jersey residents. Thus, complete diversity existed at the time of removal because Perez is a citizen of a different state than either of the Counterplaintiffs.

The parties eventually consented to proceed before Magistrate Judge Morton Denlow, and the case quickly settled. Among other terms, Perez agreed to pay Counterplaintiffs a net sum of $985,000 (after credits) in monthly installments of $27,361. Perez also signed a UCC Security Agreement granting Counterplaintiffs an interest in property that included the stone slabs at issue here. Judge Denlow dismissed the case on October 12, 2010.

Unfortunately, Perez stopped making his monthly payments in August 2011. Judge Denlow re-opened the case at Counterplaintiffs' request and eventually allowed them to

auction off much of the Chicago inventory to satisfy part of the amount Perez owed under the settlement agreement. Significantly, however, the order excluded 199 slabs of granite that Interiors had consigned to Perez and 323 slabs consigned by G&M. Judge Denlow reserved these slabs from the auction because it was unclear whether the security interest Perez had given to Counterplaintiffs was superior to the interests held by Interiors and G&M. Judge Denlow noted that an evidentiary hearing might be required to determine if Counterplaintiffs had the right to sell these consigned goods.

On November 6, 2012, the case was assigned to this Court following Judge Denlow's retirement. Counterplaintiffs now ask the Court to modify Judge Denlow's prior ruling to include the consigned slabs in an auction. In the alternative, the motion also seeks to join Interiors and G&M to this action. The Court gave the two non-parties an opportunity to respond to the joinder request. G&M has done so. Interiors has chosen to file a separate motion to intervene in the case.

## II. Discussion

### A. The Motion to Intervene

Federal Rule of Civil Procedure 24(a) requires a court to permit the intervention of any person who (1) has an unconditional right to do so under a federal statute, or (2) has an interest in the pending action and is situated such that proceeding with the case as it exists would impair the third person's ability to protect its interest. Fed. R. Civ. P. 24(a). Interiors argues that without intervention it will not be able to preserve its alleged security interest in the slabs consigned to Perez.

Rule 24(c) states that a motion to intervene, whether permissive or required, must

3

"be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). *See Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) (stating that Rule 24(c) "is unambiguous in defining the procedure for an intervenor"). Unfortunately, Interiors has not done so. The failure to file a pleading is fatal to a motion to intervene. *See, e.g., F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001); *Chandler v. City of Indianapolis*, No. 1:12-cv-0658, 2013 WL 28807, at *1 (S.D. Ind. Jan. 2, 2013).

Courts have the discretion to overlook such a procedural deficiency under Rule 24(c). *Aikens v. City of Chicago*, 202 F.R.D. 577, 585 (N.D. Ill. 2001). In this case, however, there is no reason to do so. Interiors, G&M, and Counterplaintiffs all agree that the two non-parties should be joined to this action by one means or another. In light of the joinder analysis below, addressing the merits of the motion to intervene would be superfluous. For this reason, Interiors' motion is denied for failing to comply with the requirements of Rule 24(c).

### B. Counterplaintiffs' Motion to Modify

#### 1. Counterplaintiffs' Security Interest

As discussed above, Judge Denlow believed that an evidentiary hearing might be required to determine if Counterplaintiffs' security interest in the consigned materials is superior to Interiors' and G&M's. Counterplaintiffs claim that no evidence is required to decide this issue. J.A.S. allegedly perfected its security interest by filing a UCC Financing Statement that was based on a security agreement signed by Perez. By contrast, Interiors and G&M are said not to have perfected their purchase-money security interests that Perez

4

granted when he accepted their goods on consignment.

The Court declines to reach the merits of these claims. Counterdefendants' motion is essentially one for reconsideration. Counterplaintiffs presented the same arguments to Judge Denlow in an August 17, 2012 motion (Doc. 60), which in turn asked for the modification of an earlier order issued on July 11, 2012. Motions for reconsideration only serve the limited purpose of correcting "manifest errors of law or fact or [presenting] newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted). Counterplaintiffs have not presented any reason why Judge Denlow's earlier ruling was erroneous; the current argument merely reduplicates what Counterplaintiffs presented before. This is not a ground for reconsidering the September 10, 2012 order. *See In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992) ("[M]otions to reconsider are not at the disposal of parties who want to 'rehash' old arguments.").

That said, the Court stresses that Judge Denlow did not decide who had the superior security interest in the consigned materials. Evidence may show that Counterplaintiffs' argument is correct. That will be an issue that can be presented to the state court after the case is remanded. However, the merits of the claim are not before this Court based on the pending motion. The motion is denied insofar as it seeks reconsideration of the September 10, 2012 ruling.

### 2. The Joinder of Interiors and G&M

J.A.S. argues for the first time that it should be allowed to join Interiors and G&M as parties under Rule 19 and to proceed with discovery against both entities concerning the

parties' various ownership rights.  G&M echoes this claim to some degree by arguing that joinder is necessary under Rule 19(a).  Interiors also asks to join the case, albeit as an intervener under Rule 24(a).  As an Illinois corporation, Interiors is a citizen of the same state as Perez.  The parties differ on what would happen to the Court's subject matter jurisdiction if Interiors were joined as a party.  G&M and Interiors claim that complete diversity would be destroyed and that the case should be dismissed under Rule 19(b).[1]  Counterplaintiffs disagree by arguing that the Court could retain jurisdiction because Interiors is not adverse to Perez.

### a. The Joinder of Interiors

This case was removed from state court based on diversity jurisdiction.  The joinder of a party that would destroy complete diversity in a removed case is governed by the post-removal provisions of 28 U.S.C. § 1447.  *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009); *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999); *Trent v. Ohio Nat. Life Ins. Co.*, No. 10-715, 2010 WL 4385496, at *4 (S.D. Ill. Oct. 28, 2010).  *See also McIntosh v. HSBC Bank, USA, N.A.*, 891 F. Supp.2d 985, 988 (N.D. Ill. 2012) (explaining that Rule 19 does not apply under these facts).

By its own terms, this statute applies when a plaintiff (or counterplaintiff) seeks to

---

[1] Interiors and G&M overlook that Rule 19(b) only addresses the proper course of action when a necessary party "cannot be joined."  Fed. R. Civ. P. 19(b).  It does not concern dismissal after a party is joined. *See Yniques v. Cabral*, 985 F.2d 1031, 1035 (9th Cir. 1993) ("The plain language of neither [the removal statute] nor Rule 19 gives the district court the option to authorize joinder and then dismiss the case.").  A case like this that has been removed cannot be dismissed when the federal court loses diversity jurisdiction over it.  *See Bradgate Assocs., Inc. v. Fellow, Read & Assocs., Inc.*, 999 F.2d 745, 751 (3d Cir. 1993). It is returned to the state court pursuant to the remand statute. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

6

join a non-diverse party. Section 1447(e) states:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e). This requires an initial assessment of whether Interiors falls into this category. If it does, two options exist under § 1447(e): (1) deny joinder, or (2) permit it and remand the case to state court. *Schur*, 577 F.3d at 759 ("These are the only options."). The dismissal that G&M and Interiors seek is not a possibility.

To assess whether complete diversity would continue to exist, the parties must be realigned to determine their true interests in the litigation. *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981). Realignment "is proper when the court finds that no actual, substantial controversy exists between the parties on one side of the dispute and their named opponents." *Id*. A court should look beyond the pleadings and take a pragmatic look at the primary differences between the parties instead of focusing on their points of agreement. *Id*; *see also Wolf v. Kennelly*, 574 F.3d 406, 413 (7th Cir. 2009).

Counterplaintiffs claim that joining Interiors would not affect complete diversity because that company's interests would be aligned with Perez's and would only be adverse to J.A.S. This argument is premised on the fact that a consignee like Perez ordinarily has the rights of a consignor with respect to creditors and purchasers. *See* 810 ILCS 5/9-319(a) ("[W]hile the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer."). Counterplaintiffs claim that this principle means that Perez had the right to grant it a security interest in the consigned goods. Since J.A.S. filed a UCC

7

financing statement that perfected its purchase money interest and Interiors did not, Counterplaintiffs argue that no real dispute exists between Interiors and Perez. They cite the following example set out in the commentary to UCC Article 9 as support:

> **Example 1:** SP-1 delivers goods to Debtor in a transaction constituting a "consignment" as defined in Section 9-102. SP-1 does not file a financing statement. Debtor than grants a security interest in the goods to SP-2. SP-2 files a proper financing statement. . . . [F]or purposes of determining the rights of Debtor's creditors, Debtor is deemed to acquire SP-1's rights. Accordingly, SP-2's security interest attaches, is perfected by the filing, and, under Section 9-322, is senior to SP-1's interest.

The Court disagrees with Counterplaintiffs' analysis of this issue. As Example 1 indicates, Counterplaintiffs' Article 9 argument depends on the existence of a consignment that falls within the meaning of Section 9-102 of the Illinois UCC. That section limits true consignments, *inter alia*, to the delivery of goods to a merchant who "is not generally known by its creditors to be substantially engaged in selling the goods of others." 810 ILCS 5/9-102(20)(A)(iii). G&M argued in an earlier filing that it was not required to perfect its interest in the slabs because the consignment did *not* fall within the definition of Section 9-102(20). (Doc. 66). Counterplaintiffs have not shown that it does. Since G&M's security interest appears to mirror that of Interiors', the same uncertainty at this point also applies to Interiors. Indeed, Counterplaintiffs all but concede that is the case by claiming that Interiors must be joined so that discovery can proceed on the security interest issue.

The Court agrees with Counterplaintiffs and finds that it is not clear that either G&M's or Interiors' consignment clearly falls within the terms set out in Section 9-102(20). Not surprisingly, both G&M and Interiors contend that they are adverse to Perez on this ground and that they have claims against him for improperly granting a security interest to the Counterplaintiffs. The evidence will show whether that is the case. At this stage,

however, the Court cannot conclude that a true consignment exists and that adding Interiors to this case would not create an "actual, substantial controversy" between Interiors and Perez. *Trane*, 657 F.2d at 149. Thus, the Court finds that Interiors is a non-diverse entity whose joinder would destroy complete diversity and deprive the Court of subject matter jurisdiction over the case.

That does not mean that Interiors must be added to this case. "A district court has discretion to permit or deny post-removal joinder of a nondiverse party, and the court should balance the equities to make the determination." *Schur*, 577 F.3d at 759. Four factors govern a court's decision: (1) the motive for seeking joinder, (2) the timeliness of the request, (3) the potential prejudice to the requesting party if joinder is not allowed, and (4) "any other relevant equitable considerations." *Id*.

These factors favor joining Interiors to the case. Courts are particularly concerned with intentional efforts to destroy jurisdiction by adding non-diverse parties. *Id*. In this case, however, Counterplaintiffs argue that joinder would preserve subject matter jurisdiction, not undermine it. Their motive clearly reflects a desire to advance the dispute at hand by obtaining the evidence they need to demonstrate their alleged ownership rights in the consigned materials. The motion to join does come almost three years after this case was filed. However, timeliness concerns are mitigated by the fact that the case was reinstated in January 2012, and the consignment issue does not appear to have been raised earlier. The Court is especially concerned about Interiors' and G&M's potential interest in the slabs they consigned to Perez. If the evidence shows that Perez improperly granted a security interest to Counterplaintiffs, Interiors would suffer a potentially serious economic harm. Basic fairness requires that Interiors should be joined as a party so that

it has an opportunity to assert its alleged rights in the materials. Counterplaintiffs' motion is granted on this issue.

### b. The Joinder of G&M

As an Ohio corporation, G&M would be a diverse party if it were joined to this suit. Thus, Rule 19 applies to its joinder. Rule 19(a) requires the joinder of a party if (1) the court cannot give complete relief to the existing parties without its presence, or (2) the failure to join would impede the party's interest in the suit or leave an existing party subject to inconsistent obligations. Fed. R. Civ. P. 19(a). For the reasons stated above, G&M clearly meets the second of these standards. The evidence does not show at this point if J.A.S. has the superior security interest in the stone slabs. If G&M is not joined to the action, its ability to protect its alleged interest in the materials it consigned to Perez would certainly be impaired. Counterplaintiffs' motion is granted in respect to G&M.

### III. Conclusion

For all these reasons, Counterplaintiffs' motion to modify Judge Denlow's September 10, 2012 order [77] is granted insofar as it requests the joinder of Interiors and G&M. It is denied concerning the request to reconsider the earlier order. Interiors' motion to intervene [86] is denied. Interiors and G&M are hereby joined as parties to this action. Pursuant to 28 U.S.C. § 1447(e), this case is remanded to the Circuit Court of Cook County from which it was removed.

ENTERED:

_____
**DANIEL G. MARTIN**
**United States Magistrate Judge**

Dated: April 16, 2013